USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/12/2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JEAN VERLUS, JOANNE VERLUS, and PAULINE VERLUS,

                Plaintiffs,

-against-

LIBERTY MUTUAL INSURANCE COMPANY, WILSON TAYLOR, BEVERLY TAYLOR, and GRACE TAYLOR,

                Defendants.

No. 14-cv-2493 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

    This action arises out of an attack by Defendants Wilson, Beverly, and Grace Taylor's (collectively, the "Taylors") two dogs on Plaintiffs Jean and Joanne Verlus. Following the attack, Plaintiffs sued the Taylors for their injuries in Westchester County Supreme Court. The action resulted in a judgment, entered on September 24, 2013, in favor of Plaintiffs in the amount of $1,076,494.72. Defendant Liberty Mutual Insurance Company ("Liberty"), the Taylors' insurance carrier, paid Plaintiffs $314,619.67 inclusive of interest, purportedly in accordance with the liability provisions of the Taylors' insurance policy (the "Policy"). Liberty argues that the attack constitutes only one "occurrence" under the Taylors' policy and that payment for each occurrence is capped at $300,000.

    Plaintiffs subsequently filed this Complaint, seeking a declaratory judgment that the attack by the Taylors' dogs constitutes three separate "occurrences" within the meaning of the Policy, requiring payment of $900,000 to Plaintiffs.

    Before the Court is Liberty's motion for summary judgment. For the following reasons, Liberty's motion is GRANTED.

**BACKGROUND**

Though the facts of this matter are not genuinely in dispute, Plaintiffs' failure to specifically controvert Defendant's Local Civil Rule 56.1 Statement ("Def.'s 56.1") requires this Court to deem Defendant's version of the facts admitted for purposes of this motion.[1]  S.D.N.Y. Loc. Civ. R. 56.1(c).

On May 28, 2011, Plaintiffs Jean and Joanne Verlus were walking on the street near the Taylors' home in White Plains, New York.  (Def.'s 56.1 ¶¶ 2-5.)  Jean and Joanne were walking close together, no more than a few feet from one another, while having a conversation in normal voices.  (*Id.* ¶¶ 7, 15.)  Joanne was on the right side of the street; Jean was on the left side of the street.  (*Id.* ¶ 9.)  At some point during Jean's and Joanne's walk, the Taylors' two American Pit Bull Terriers, Doom and Diva, started running towards Jean and Joanne.  (*Id.* ¶ 8.)  Both dogs approached Plaintiffs from the same direction, the right side of the street, nearest to Joanne.  (*Id.* ¶ 9.)  The darker colored dog, Doom, jumped towards Jean's face, while the lighter colored dog,

---

[1] Plaintiffs and Defendant Liberty have each failed to follow the simple mandates of Local Civil Rule 56.1. Defendant Liberty's Local Civil Rule 56.1 Statement, although spanning only 14 pages in total, contains nearly 10 pages of excerpted deposition testimony from Plaintiffs Jean and Joanne Verlus. (Def.'s 56.1 at 2-12.)  These excerpts are a far cry from the "brief, numbered paragraphs" contemplated by the Rule. (*See* Committee Note, S.D.N.Y. Loc. Civ. R. 56.1.)  Defendant should have summarized the deposition testimony into concise, numbered paragraphs, with citations to the relevant portions of the deposition transcripts.
  Likewise, Plaintiffs failed to submit a proper opposition to Defendant's Rule 56.1 Statement.  The Rule states that "[e]ach numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." S.D.N.Y. Loc. Civ. R. 56.1(c).  Plaintiffs failed to deny, let alone specifically controvert, any of Defendant's 56.1 statements, instead opting to submit their own statement of material facts.  Further, though less problematic, Plaintiffs also failed to follow this Court's Individual Practices, which require that the nonmoving party "reproduce each entry of the moving party's Rule 56.1 Statement and . . . set out responses to each entry directly beneath it." Individual Practices, Rule 3(G)(iii).  Plaintiffs submitted their own Local Civil Rule 56.1 Statement, without reference to any of Defendant's statements.  Plaintiffs' failure to specifically controvert Defendant's statements requires the Court to deem them admitted for purposes of this motion.  S.D.N.Y. Loc. Civ. R. 56.1(c); *Gadsden v. Jones Lang Lasalle Americas, Inc.*, 210 F. Supp. 2d 430, 438 (S.D.N.Y. 2002) ("Courts in this circuit have not hesitated to deem admitted the facts in a movant's Local Civil Rule 56.1 Statement that have not been controverted by a Local Civil Rule 56.1 statement from the nonmoving party.") (collecting cases); *McCarthy v. Wachovia Bank, N.A.*, 759 F. Supp. 2d 265, 272 (E.D.N.Y. 2011) (failure to submit a 56.1 statement specifically controverting the moving party's 56.1 statement results in the statements being deemed admitted for purposes of the motion).

Diva, attacked Joanne.  (*Id.* ¶ 8.)  Jean and Joanne then ran in opposite directions in an attempt to escape the dogs.  (*Id.* ¶ 9.)

Diva bit Joanne on her buttocks and her middle finger.  (*Id.* ¶ 16.)  Joanne then fell to her knees and crawled to higher ground – what she described as a cement block – out of Diva's reach.  (*Id.* ¶¶ 16, 17.)  Diva barked at Joanne for a short period of time and then left to join Doom's attack on Jean.  (*Id.* ¶ 17.)  The entire attack on Joanne lasted less than one minute.  (*Id.* ¶ 18.)

Meanwhile, Doom was attacking Jean.  Diva then joined the attack, biting Jean's groin area and feet.  (*Id.* ¶ 10.)  The entire attack on Jean lasted three or four minutes.  (*Id.* ¶ 13.)  Jean testified that the dogs' owner watched the entire attack, and despite Jean's pleas for help, did nothing to stop the attack.  (*Id.* ¶ 11.)

## STANDARD ON A MOTION FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of pointing to evidence in the record, "including depositions, documents [and] affidavits or declarations," *id.* at 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party may also support an assertion that there is no genuine dispute by "showing . . . that [the] adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(B).  If the moving party fulfills its preliminary burden, the onus shifts to the non-moving party to identify "specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal citation and quotation marks

omitted). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *accord Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013) (summary order). Courts must "constru[e] the evidence in the light most favorable to the non-moving party and draw[ ] all reasonable inferences in its favor." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (internal quotation marks omitted). In reviewing the record, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," nor is it to determine a witness's credibility. *Anderson*, 477 U.S. at 249. Rather, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Id.* at 250.

Summary judgment should be granted when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The party asserting that a fact is genuinely disputed must support their assertion by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999). The nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation." *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (internal citation and quotation marks omitted). Moreover, "[a nonmoving party's] self-serving statement, without direct or circumstantial evidence to support the charge, is insufficient to defeat a motion for summary judgment." *Fincher v. Depository Trust & Clearing Corp.*, No. 06 Cv. 9959 (WHP), 2008 WL 4308126, at *3 (S.D.N.Y. Sept. 17, 2008) *aff'd*, 604 F.3d 712 (2d Cir. 2010) (citing *Gonzales v. Beth Israel Med. Ctr.*, 262 F. Supp. 2d

342, 353 (S.D.N.Y. 2003)).

## DISCUSSION

**I.     The Attack Constitutes One Occurrence Under The Policy**

   *A.     Relevant Law*

The issue presented to the Court is straightforward – does the attack by the Taylors' dogs constitute one or three occurrences under the Policy. Plaintiffs argue that the attack constitutes three occurrences – the first attack on Jean Verlus by Doom; the second attack on Joanne Verlus by Diva; and the third attack on Jean Verlus by Diva. Defendant contends that the attack by the two dogs constituted one continuous act, such that it should be considered the result of one occurrence under the Policy. Where, as here, there is no dispute as to what occurred, the issue of whether the underlying act or acts constitute more than one occurrence is a question of law for the Court to decide. *Hartford Acc. & Indem. Co. v. Wesolowski*, 33 N.Y.2d 169, 172 (1973).

When "determining a dispute over insurance coverage, we first look to the language of the policy." *Consol. Edison Co. of New York v. Allstate Ins. Co.*, 98 N.Y.2d 208, 221 (2002) (citing *Breed v. Insurance Co. of N. Am.*, 46 N.Y.2d 351, 354 (1978)). The Court "construe[s] the policy in a way that 'affords a fair meaning to all of the language employed by the parties in the contract and leaves no provision without force and effect.'" *Id.* at 221-22 (quoting *Hooper Assoc. v. AGS Computers*, 74 N.Y.2d 487, 493 (1989)). Moreover, when interpreting an insurance policy, "an unambiguous provision must be given its plain and ordinary meaning." *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 116 (2d Cir. 2005) (quoting *State of New York v. Am. Mfrs. Mut. Ins. Co.*, 188 A.D.2d 152 (3d Dep't 1993) (internal quotation marks omitted)). Simply put, insurance policies are interpreted like any other contract. *White v. Cont'l Cas. Co.*, 9 N.Y.3d 264, 267 (2007).

In New York, courts generally apply the "unfortunate event" test "to determine whether there are one or more occurrences within the meaning of an insurance clause limiting coverage to a certain amount per occurrence." *Roman Catholic Diocese of Brooklyn v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 21 N.Y.3d 139, 148 (2013) (internal citation, quotation marks, and alterations omitted). This approach rejects "other approaches that would equate the number of occurrences with either 'the sole proximate cause' or by the 'number of persons damaged.'" *Id.* (internal citations omitted). The unfortunate event test will not apply, however, when an insurance policy indicates "an intent to aggregate separate incidents into a single occurrence." *Id.* In *Roman Catholic Diocese of Brooklyn*, the New York Court of Appeals provided the following as an example of such aggregating language: "(a)ll such exposure to or events resulting from substantially the same general conditions during the policy period *shall be deemed one occurrence.*" *Id.* at 149 (quoting *Consol. Edison Co. of New York*, 98 N.Y.2d at 222) (emphasis in original).

  B. *Application*

The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in: a. 'Bodily injury'; or b. 'Property damage.'" (Declaration of Joseph Egan in Support of Motion for Summary Judgment ("Egan Decl."), Ex. 3, LibertyGuard Deluxe Homeowners Policy at 1.) The Policy also describes the limit of liability per occurrence as follows:

> Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the limit of liability for Coverage E as shown in the Declarations. This limit is the same regardless of the number of "insureds," claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one occurrence.

(*Id.* at 14.)

Comparing the language limiting the liability per occurrence in the Policy with the language cited by the New York Court of Appeals in *Roman Catholic Diocese of Brooklyn*, it is clear that the Policy "evinces an intent to aggregate the incidents . . . into a single occurrence." *Roman Catholic Diocese of Brooklyn*, 21 N.Y.3d at 149.  *See also Mt. McKinley Ins. Co. v. Corning Inc.*, 96 A.D.3d 451, 452 (1st Dep't 2012).  The Policy includes unambiguous language that "'bodily injury' . . . resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions *shall be considered to be the result of one occurrence*."  (Egan Decl., Ex. 3, LibertyGuard Deluxe Homeowners Policy at 14) (emphasis added.)  The Court therefore declines to apply the unfortunate event test to determine the number of occurrences under the Policy.

When not applying the unfortunate event test, the Second Circuit, in analyzing similar contractual terms, has noted that "New York courts appear to interpret such a grouping provision as at most combining exposures emanating from the same location at a substantially similar time."  *Bausch & Lomb Inc. v. Lexington Ins. Co.*, 414 F. App'x 366, 368-69 (2d Cir. 2011) (citing *Ramirez v. Allstate Ins. Co.,* 26 A.D.3d 266 (1st Dep't 2006) (interpreting similar provision as grouping infants' "exposure to the same lead hazard in the same apartment"); *Mt. McKinley Ins. Co. v. Corning Inc.*, 28 Misc.3d 893, 907-09 (Sup. Ct. 2010) *aff'd,* 96 A.D.3d 451, 452 (1st Dep't 2012) (noting cases interpreting similar provision as grouping incidents arising at same place and roughly same time)).

Turning to the pertinent facts of this case, Plaintiffs Jean and Joanne Verlus testified during their respective depositions that they were walking together, roughly within an arms-length distance from each other, when they saw two dogs running towards them.  (Def.'s 56.1 ¶¶ 5-8, 14-15.)  The dogs attacked Jean and Joanne simultaneously.  (*Id.* ¶ 5.)  One dog, Doom,

attacked Jean; the other dog, Diva, attacked Joanne.  (*Id.* ¶¶ 10, 16.)  Joanne was able to "climb[] to higher ground" to escape Diva's attack, at which point Diva left to join Doom's attack on Jean.  (*Id.* ¶¶ 10, 16-17.)  The entire encounter with the dogs lasted about three or four minutes.  (*Id.* ¶ 13.)

Although the issue of whether a multi-dog, multi-victim attack constitutes one or more occurrences under an insurance policy has not been decided in this Circuit, Defendant directs the Court to two cases, one from Connecticut and one from Tennessee, which held that multi-dog attacks did not constitute multiples occurrences.  *See Sun v. Traveler's Indem. Co.*, No. CV990268822S, 2001 WL 576656, at *1 (Conn. Super. Ct. May 9, 2001) (holding that attacks on one individual by two dogs at nearly the same time constituted one occurrence); *Am. Modern Select Ins. Co. v. Humphrey*, No. 3:11-CV-129, 2012 WL 529576, at *1 (E.D. Tenn. Feb. 17, 2012) (holding that a 20 minute attack on one individual by seven dogs constituted one occurrence).  In *Sun*, the Superior Court of Connecticut looked to "the event or events triggering liability on the part of the insured" to determine the number of occurrences under the policy. *Sun*, 2001 WL 576656, at * 2.  In *Humphrey*, the Eastern District of Tennessee applied an "effects" test to determine the number of occurrences under the policy.  The Court explained "that Tennessee courts look not to the cause of an incident when construing a 'per occurrence' or 'per accident' provision, but to the result or effect of the attack on the victim or victims." *Humphrey*, 2012 WL 529576, at *8.  Though both courts reached the same conclusion – that multi-dog attacks on one individual constitute one occurrence – they did so based on different tests, neither of which the parties assert are the applicable test under New York law.  Instead, this Court is guided by the Second Circuit's understanding of New York law on this issue – that such

8

provisions should be interpreted to "at most combin[e] exposures emanating from the same location at a substantially similar time." *Bausch & Lomb Inc.*, 414 F. App'x at 368-69.

Plaintiffs presumed, albeit incorrectly, that the unfortunate event test would apply to the Policy and only analyzed their claims under that test. Despite Plaintiffs' error, the Court will apply Plaintiffs' arguments to the broader test of whether the underlying attacks emanated from the same location at a substantially similar time. Plaintiffs' arguments can be boiled down to the following: (1) there were three separate and distinct attacks by two dogs; (2) the attacks were temporally and spatially separate – Jean and Joanne were attacked "almost fifty feet away from" each other, and the attack on Jean was longer in duration; and (3) the attacks were not causally connected. (Pl.'s Opp. at 7-16.)

After a thorough review of the facts underlying this action, and having taken into account Plaintiffs' arguments in opposition to the instant motion, the Court finds that the attack by the Taylors' dogs constituted "continuous or repeated exposure to substantially the same general harmful conditions" and thus qualifies as one occurrence under the Policy. The attack occurred while Plaintiffs Jean and Joanne Verlus were walking within arms-length of each other and lasted for a very short period of time. Although Jean and Joanne were not exposed to the *exact* same conditions, they were exposed to the same *general* conditions – a simultaneous attack by two dogs – which the Policy makes clear are treated as one occurrence for liability purposes. "[T]o say that the 'general conditions' were not the same would deprive the word 'general' of all meaning." *Nesmith v. Allstate Ins. Co.*, 24 N.Y.3d 520, 525 (2014). Moreover, it is beyond dispute that the attacks on Jean and Joanne emanated from the same location – both Plaintiffs testified that the dogs were running towards them from the same direction at the same time – and

that the attacks occurred at a substantially similar time – Jean and Joanne were attacked simultaneously, over a short three to four minute period.

To the extent Plaintiffs argue that because Jean and Joanne were both injured the Court should find their injuries constitute multiple occurrences, the plain language of the Policy forecloses such a result, as it limits liability per occurrence "regardless of the number of 'insureds,' claims made *or persons injured*." (Egan Decl., Ex. 3, LibertyGuard Deluxe Homeowners Policy at 14.)

## CONCLUSION

For the foregoing reasons, Defendant Liberty's motion for summary judgment is GRANTED. The Court respectfully directs the Clerk to terminate the motion at ECF No. 25 and to amend the caption to reflect Liberty Mutual Insurance Company's dismissal from this case.

Dated: November 12, 2015
White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge